Blake D. Miller (4090)
Deborah R. Chandler (12057)
**MILLER TOONE, P.C.**
165 Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
E-mail: miller@millertoone.com
       chandler@millertoone.com

Proposed Attorneys for the Debtor

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In re: | Bankruptcy Case No. 15-24141 |
|---|---|
| | Chapter 11 |
| **FINGER LICKIN' BRANDS, LLC, dba Dickey's Barbecue Pit of Utah** | Honorable Joel T. Marker |
| Debtor. | **(Filed Electronically)** |

## STIPULATION FOR USE OF CASH COLLATERAL

Finger Lickin' Brands, LLC ("Debtor") and Rewards Network Establishment Services Inc. ("Rewards Network") stipulate as follows:

1. **Rewards Network's Interest in Cash Collateral**. Rewards Network asserts an interest in the following collateral of the Debtor:

> [A]ll . . . equipment, furniture, artwork, inventory, instruments, investment property, documents, general intangibles, deposits, contract rights, trade names, trademarks, patents, supporting obligations, payment intangibles, chattel paper, commercial tort claims, licenses, liquor licenses, permits, franchise agreements, payments due from credit card and bank card companies or processors, accounts receivable, accounts, leases, deposit accounts, refunds of bonds, monies due or to become due from the State Liquor Authority and/or State Division of Alcoholic Beverage Control and, to the extent not listed above as original

>collateral, all products and proceeds of all of the Collateral in whatever form . . . .

*See*, *e.g.*, Agreement dated 2/20/2013 at § E(1).[1] Pursuant to this Stipulation, the parties intend on addressing the ability of on terms on which the Debtor is authorized to use cash collateral asserted by Rewards Network. This stipulation, however, is without prejudice to the rights of the Debtor and all interested parties to investigate and challenge, if appropriate, Rewards Network's asserted security interest.

2. **Authority to Use Cash Collateral**. The Debtor is authorized to use Cash Collateral *nunc pro tunc* to the Petition Date only to pay the authorized expenses contained in the budget attached hereto as "Exhibit 1" (the "**Budget**"), which is incorporated herein by reference. The Debtor may use Cash Collateral in amounts up to fifteen percent (15%) in excess of any line item in the Budget without the prior written consent of Rewards Network, except that the budgeted amounts for rent and payments to insiders shall be fixed and shall not vary from the Budget. Any further or additional agreements for the use of Cash Collateral, at the sole discretion of Rewards Network, shall be memorialized in a separate cash collateral agreement.

3. **Postpetition Performance Under § 365**. As adequate protection to Rewards Network, the Debtor shall perform and cause all of its restaurants to perform under the RN Documents pursuant to § 365 of the Bankruptcy Code until such time that the RN Documents are either assumed or rejected in accordance with Bankruptcy Code § 365. Subject to a rejection under § 365, the Debtor and Rewards Network are authorized and directed to perform, and shall continue to perform all of their respective obligations under the RN Documents post-petition unless and until a Termination Event (defined below) occurs. Any amounts paid by the Debtor to Rewards Network shall be applied to reduce the outstanding dining credits owing under the Agreements (and thus the asserted secured claim of Rewards Network in accordance with the terms thereof). All the rights of the Debtor and Rewards Network under Bankruptcy Code § 365 regarding the

---

[1] All capitalized terms used herein and not otherwise defined shall have the same meaning ascribed to them in the Motion To Approve Cash Collateral Stipulation With Rewards Network Establishment Services Inc., Including Approving Replacement Liens filed contemporaneously herewith.

assumption or rejection of the Agreements are fully reserved.

4. **Authorized Withdrawals**. Pursuant to the Agreements and this Stipulation, Rewards Network is authorized to process automated clearing house ("**ACH**") debits from the Debtor's bank account (Debtor-in-possession account or otherwise) for any and all amounts which come due and owing under the RN Documents based on any obligations which arise post-petition thereunder as permitted in Paragraph C above in accordance with the RN Documents and in the ordinary course of business, until such time that the Agreements are either assumed or rejected in accordance with Bankruptcy Code § 365. To the extent applicable, all applicable stays and injunctions, including but not limited to the automatic stay under Bankruptcy Code § 362(a), shall be terminated solely to permit such ACH debits. The Debtor is required to provide to Rewards Network all information required to permit Rewards Network to make the withdrawals or debits from its designated account within one (1) business day of the entry this Stipulation.

5. **Replacement Liens**. Notwithstanding anything in Bankruptcy Code § 552 to the contrary, and in addition to its liens and security interests under the existing RN Documents, as adequate protection for the use of cash collateral, Rewards Network shall have and is hereby granted nunc pro tunc to the Petition Date (effective and continuing without the necessity of the execution, filing and/or recordation of mortgages, deeds of trust, security agreements, control agreements, pledge agreements, financing statements or otherwise), a valid and perfected security interest and lien (the "**Replacement Liens**") in all of the Debtor's now owned or after acquired personal property of the types described in the RN Documents (collectively, the "**Replacement Collateral**"). The Replacement Liens will not include any property located in or accounts generated by the Dillon Colorado restaurant, other than Purchased Receivables (as that term is defined in the Dining Credits Program Agreement) generated by the operation of the Dillon restaurant – which receivables will specifically be subject to the Replacement Liens. The Replacement Liens will be evidenced by the existing RN Documents, this Stipulation, and any other applicable documents. The Replacement Liens will only secure any diminution in value of Rewards Network's collateral after the Petition Date, including any diminution in cash collateral.

In addition, subject to the provisions of § 552, Rewards Network will retain, to the same extent, validity and priority, all of its existing liens and security interests in all of the Collateral, including, without limitation, the liens and security interests described above and any rights of setoff and/or recoupment.  The Replacement Liens shall be to the same extent, validity and priority as Rewards Network's prepetition liens.

6. **Perfection of Replacement Liens**.  The Replacement Liens in the Replacement Collateral granted hereby shall be valid, perfected, enforceable and effective, to the same extent, validity and priority as its prepetition liens, against the Debtor and its successors and assigns, including any trustee or receiver in these or any superseding Chapter 7 cases, without any further action by the Debtor or Rewards Network and without the execution, delivery, filing or recordation of any control agreements, promissory notes, financing statements, mortgages, security agreements or other documents.  The Debtor acknowledges that Rewards Network may, but is not required to, file any financing statement to perfect the Replacement Liens granted by this Stipulation.

7. **Termination Events**: Unless extended further with the written consent of Rewards Network (confirmed by the execution of another cash collateral agreement and entry of a further order of the Court approving such further cash collateral agreement), the authorization granted to the Debtor to use Cash Collateral under this Stipulation will terminate automatically and without further notice upon the earliest of:

> i. the date upon which the Debtor is no longer a Debtor-In-Possession in the Bankruptcy Case or is otherwise limited or excluded from the management and operation of their business (through the appointment of a trustee or an examiner under the Bankruptcy Code, or through the appointment of some other type of fiduciary or custodian under federal or state law);
>
> ii. the granting of stay relief to any party that claims an interest in the Collateral or in the Replacement Collateral;

      iii.      the Debtor ceases to operate any of the Restaurants without the prior written consent of Rewards Network;

      iv.      the Debtor files or otherwise consents to any motion seeking to dismiss the Debtor's bankruptcy case or convert the Debtor's bankruptcy case to Chapter 7;

      v.      the Debtor fails to comply with the provisions of this Stipulation, including any breach of the RN Agreements by the Debtor following no less than three (3) business days notice to the Debtor's counsel; or

      vi.      July 17, 2015.

(Any of the forgoing shall be referred to as a "**Termination Event**"). Notwithstanding any such Termination Event, the rights, claims, security interests, liens and priorities of Rewards Network with respect to all transactions that occur prior to the occurrence of such termination, including, without limitation, all liens and priority claims provided for in this Stipulation, will remain unimpaired and unaffected by any such termination and will remain subject to the provisions of this Stipulation.

      8.      **Reports**. During the term of this Stipulation, the Debtor will respond promptly to any reasonable request for relevant accountings or other financial information from Rewards Network and shall permit inspection of its books and records, or the Restaurants or other Collateral by Rewards Network (or its representatives) upon three (3) business day's notice.

      9.      **Terms Binding**. The provisions of this Stipulation will be binding upon and inure to the benefit of Rewards Network and the Debtor and its respective successors and assigns, including but not limited to any trustee in bankruptcy hereinafter appointed as a representative of the Debtor's estate.

10. **Modifications**. Any of the requirements of this Stipulation may be waived or modified by Rewards Network and the Debtor jointly in writing. No subsequent stay, modification, termination, failure to extend the term of or vacation of this Stipulation shall affect, limit or modify the validity, enforceability or perfection of the Replacement Liens granted to Rewards Network.

Dated this 5th day of June, 2015

| | |
|---|---|
| Finger Lickin' Brands, LLC | Rewards Network Establishment Services Inc. |
| By: */s/ Dave Michelson* | By: */s/ Michael F. Thomson* |
| Its: Manager | Its: Counsel |