Blake D. Miller (4090)
Deborah R. Chandler (12057)
**MILLER TOONE, P.C.**
165 Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
E-mail: miller@millertoone.com
         chandler@millertoone.com

Attorneys for the Debtor

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In re:<br><br>**Finger Lickin' Brands, LLC**<br><br>Debtor. | **Bankruptcy Case No. 15-24141**<br>**Chapter 11**<br><br>**Honorable Joel T. Marker**<br><br>**(Filed Electronically)** |
|---|---|

## MOTION FOR AUTHORITY TO OBTAIN CONSTRUCTION LOAN UNDER 364(c)

Finger Lickin' Brands, LLC, LC ("Debtor") pursuant to 11 U.S.C. § 364(c), Fed. R. Bankr. P. 4001(c), and Local Bankruptcy Rule 4001-2 seeks authorization and approval for the Debtor to enter into the loan transaction (the "Loan") proposed in the Promissory Note and Security Agreement, copies of which are attached hereto as Exhibit "A" (the "Loan Documents"). In support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

2. On May 5, 2015, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3. The Debtor is a Utah limited liability company that owns and operates seven Dickey's Barbecue Pit franchised restaurants.

4. The Debtor has a number of secured and unsecured creditors, and is continuing to operate its Dickey's Barbecue Pit franchised restaurants as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5. Prior to filing its voluntary petition, the Debtor was in the process of building a Dickey's Barbecue Pit in Dillon, Colorado. The building is approximately 80% completed, however, Debtor requires additional financing to complete the construction, pay certain subcontractors and other construction related expenses that are due and owing on the project. A fully operational restaurant is significantly more valuable to the Debtor's estate than a partial build out. In addition, the opening weeks for a franchise have historically resulted in a large influx of revenues for the Debtor. It is anticipated that the Dillon, Colorado store will open in early to mid-July 2015. Accordingly, the Debtor is in need of a short term construction loan to bridge its cash needs for the final phases of construction. In addition, the Debtor has arranged

the sale of the Farmington, Utah store that will bring substantial cash into the estate. Bankruptcy Court approval of that sale will be sought.

## LOAN TERMS

6.      In accordance with Rule 4001(c), a summary of the Loan terms is set forth below. Reference is made to the actual Loan Documents for specific details. To the extent there is any discrepancy between the following summary and the Loan Documents, the Loan Documents shall control. Capitalized terms not defined herein have the meaning ascribed in the Loan Documents.

   a.      **Parties.** The Lender is Koford Holdings, LLC, and the Borrower is the Debtor. Koford Holdings, LLC is a pre-petition creditor.

   b.      **Amount.** The amount borrowed is $180,000.00.

   c.      **Interest and Fees.** Interest shall accrue at an annual rate of 8%. Any amount not paid by the Maturity Date shall bear interest at a default rate of 10% from the origination date of the loan.

   d.      **Payments.** No payments shall be due prior to September 10, 2015 (the Maturity Date). On the Maturity Date, if the real property that secures this Note has not been sold or transferred, then Borrower shall be permitted to extend the Maturity Date to the date of the actual sale or transfer of the real property that secures this Note by giving notice of such extension to the Note Holder. In exchange for such extension, upon giving notice of such extension to the Note Holder, Borrower shall become obligated to pay the Note Holder an amount equal to ten percent of the net profits of the business of Borrower located at and operated from the real property that secures this Note within three (3) days of the date of the actual sale or transfer of the real property. For purposes of this Note, "net profits" means, with respect to the business identified above, the total revenue minus the total expenses. Such payment shall be in addition to the payment of principal and accrued interest.

   e.      **Term and Maturity Date.** The Maturity Date shall be deemed to be the earlier of the following events: (i) September 10, 2015 or (ii) upon the sale or transfer of the real property which secures this note, whichever occurs first.

    f. **Security.** The Loan will be secured partially by a lien which is not otherwise subject to a lien. Pursuant to the Security Agreement and Financing Statement, the Debtor is granting Lender the business name for the franchise restaurant; all business records, all business customer, client, vendor, and supplier lists; all office furniture; all computers; software on the computer(s); all kitchen appliances and kitchen equipment; all supplies (including, without limitation, perishable, disposable, janitorial, restaurant, or office); restaurant furniture and furnishings; all sale registers; restaurant tools and utensils; signage; the leased space and tenant improvements at 282 U.S. Highway 6, Unit 19, Dillon, CO 80012; receivables; and, without being construed as a limitation, the following specifically listed items: Ole Hickory Smoker; Aloha POS system; Steam table; sandwich prep table; bun toaster; shelving; walk in cooler; stainless steel tables and sinks; small wares; tables and chairs, signage, ice cream machine and 3 televisions.

  7. Pursuant to Rule 4001(c) and Local Rule 4001-2, the Debtor states that no extraordinary relief is sought in this Motion or the proposed Order of the kind discussed in these rules, except for the granting of a lien under § 364(c).

## APPLICABLE AUTHORITY

  8. 11 U.S.C. § 364(c) allows the Court, after notice and a hearing, to authorize the Debtor to obtain credit or incur debt "[i]f the [Debtor] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense." The security allowed under this section and sought by this Motion is set forth in 11 U.S.C. §364(c)(2), being a lien "on property of the estate that is not otherwise subject to a lien".

  9. The Debtor has conducted extensive negotiations with multiple lending parties and has not been able to obtain unsecured financing. The Lien proposed to be granted by this Motion and Loan Documents is a first position lien on the assets, receivables, and equipment of the Dillon, Colorado Dickey's Barbecue Pit. As a result, no secured creditor is being primed in any fashion.

4

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court authorize and approve the Debtor to enter into the Loan, authorizing the Debtor to complete any and all tasks necessary to effectuate and close the Loan, pursuant to the Loan Documents, and that the Order be effective upon entry pursuant to Rule 6004(h).

DATED this 8th day of June, 2015.

MILLER TOONE, P.C.

/s/ Deborah R. Chandler
Blake D. Miller
Deborah R. Chandler
Attorneys for the Debtor

# EXHIBIT A

IF THIS FORM IS USED IN A CONSUMER CREDIT TRANSACTION, CONSULT LEGAL COUNSEL. THIS IS A LEGAL INSTRUMENT. IF NOT UNDERSTOOD, LEGAL, TAX OR OTHER COUNSEL SHOULD BE CONSULTED BEFORE SIGNING.

## PROMISSORY NOTE

**U.S. $180,000.00**  Dillon, Colorado
June 19, 2015

1.  FOR VALUE RECEIVED, the undersigned (hereinafter the "**Borrower**") promises to pay **Koford Holdings, LLC** or order (hereinafter the "**Note Holder**") the principal sum of One Hundred Eighty Thousand Dollars (U.S. $180,000.00), with interest on the unpaid principal balance from June 19, 2015, until paid, at the rate of eight percent (8%) per annum. The payment of the outstanding balance together with accrued and unpaid interest shall be paid as provided below.

2.  One installment of the total principal advanced together with any and all accrued and unpaid interest shall be payable in full to Koford Holdings, LLC at P.O. Box 150022, Ogden, UT 84415 or such other place as designated by the Note Holder, September 10, 2015 or upon the sale or transfer of the real property which secures this note (this "**Note**"), whichever occurs first (the "**Maturity Date**"); provided, however that Borrower may elect to extend the Maturity Date as provided below in paragraph 3.

3.  If the real property that secures this Note has not been sold or transferred prior to September 15, 2015, then Borrower shall be permitted to extend the Maturity Date to the date of the actual sale or transfer of the real property that secures this Note by giving notice of such extension to the Note Holder. In exchange for such extension, upon giving notice of such extension to the Note Holder, Borrower shall become obligated to pay the Note Holder an amount equal to ten percent of the net profits of the business of Borrower located at and operated from the real property that secures this Note within three (3) days of the date of the actual sale or transfer of the real property. For purposes of this Note, "net profits" means, with respect to the business identified above, the total revenue minus the total expenses. Such payment shall be in addition to the payment of principal and accrued interest.

4.  Payment is due on the dates specified and shall be considered in default in the event the required payment if not made by the end of business on the Maturity Date. Borrower understands and agrees to pay the Note Holder a default interest rate of ten percent (10%) from the origination date of loan.

A default by Borrower under any of the following documents shall constitute a default of this Note and shall result in Acceleration:
   a. the *Security Agreement and Financing Statement* (executed on an even date herewith);
   b. the *Lease* (for 282 U.S. Highway 6, Unit 19, Dillon, Colorado, 80012 as such lease was assigned by Note Holder to Borrower on an even date herewith);
   c. the *Franchise Agreement* between Borrower and Dickeys; and/or

Further, a default by Borrower of this Note shall constitute and result in a default of the Security Agreement and the Lease. Note Holder shall be entitled to collect all reasonable costs, expenses and reasonable attorneys'

NTD 81-10-06  PROMISSORY NOTE                Page 1 of 2                BORROWER: _____

fees incurred for collection and enforcement of rights under this Note and upon all events of default under this Note.

5.  Borrower may prepay the principal amount outstanding under this Note, in whole or in part, at any time without penalty. Any partial prepayment shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent payments or change the amount of such payments.

6.  Borrower and all other makers, sureties, guarantors, and endorses hereby waive presentment, notice of dishonor and protest, and they hereby agree to any extensions of time of payment and partial payments before, at, or after maturity. This Note shall be the joint and several obligation of Borrower and all other makers, sureties, guarantors and endorsers, and their successors and assigns.

7.  Any notice made to Borrower or Note Holder under this Note shall be made in writing and deemed effective upon:
    a. hand-delivery to the party (with confirming affidavit by the person making the delivery);
    b. three (3) calendar days after mailing such notice via certified U.S. mail (return receipt requested) to the address designated by the recipient party for notice; or
    c. one (1) calendar day after mailing such notice via overnight courier service (e.g., overnight U.P.S. or FedEx) to the address designated by the recipient party for notice.

For determining notice in accordance with the above, Saturdays, Sundays, and federal legal holidays shall be excluded. Any party changing an address shall provide notice of the same in accordance with this paragraph 7.

8.  The indebtedness evidenced by this Note is secured by a *Security Agreement and Financing Statement* of even date herewith, and until released said *Security Agreement and Financing Statement* contain additional rights of Note Holder.

**BORROWER SHALL SIGN THE ORIGINAL NOTE ONLY. NOTE HOLDER SHALL RETAIN THE ORIGINAL OF THIS NOTE UNTIL THE DEBT OWED UNDER THIS NOTE IS FULLY SATISFIED.**

BORROWER:

_____

Borrower's address for Notice purposes:

_____
_____

The undersigned hereby unconditionally guarantees the obligations of the Borrower contained in this Promissory Note.

_____
JT Thomson

NTD 81-10-06 PROMISSORY NOTE            Page 2 of 2            BORROWER:_____

IF THIS FORM IS USED IN A CONSUMER CREDIT TRANSACTION, CONSULT LEGAL COUNSEL. THIS IS A LEGAL INSTRUMENT. IF NOT UNDERSTOOD, LEGAL, TAX OR OTHER COUNSEL SHOULD BE CONSULTED BEFORE SIGNING.

## STATE OF COLORADO

### UNIFORM COMMERCIAL CODE - SECURITY AGREEMENT AND FINANCING STATEMENT

**Debtor:**
Name: **Finger Lickin' Brands, LLC**

Address:
Personal: _____

Business: 282 U.S. Highway 6, Unit 19, Dillon, Colorado, 80012

**Secured Party:**
Name:    **Koford Holdings, LLC**

Address:    P.O. Box 150022, Ogden, Utah  84415

Debtor, for consideration, hereby grants to Secured Party a security interest in the following property and any and all additions, accessions and substitutions thereto or therefor (hereinafter the "**COLLATERAL**"):

The business name for the franchise restaurant; all business records, all business customer, client, vendor, and supplier lists; all office furniture; all computers; software on the computer(s); all kitchen appliances and kitchen equipment; all supplies (including, without limitation, perishable, disposable, janitorial, restaurant, or office); restaurant furniture and furnishings; all sale registers; restaurant tools and utensils; signage; the leased space and tenant improvements at 282 U.S. Highway 6, Unit 19, Dillon, CO 80012; receivables; and, without being construed as a limitation, the following specifically listed items:  Ole Hickory Smoker; Aloha POS system; Steam table; sandwich prep table; bun toaster; shelving; walk in cooler; stainless steel tables and sinks; small wares; tables and chairs, signage, ice cream machine and 3 televisions.

To secure payment of the indebtedness evidenced by that certain promissory note of even date herewith, payable to the Secured Party, or order as follows:

The principal sum of One Hundred Eighty Thousand Dollars (U.S. $180,000), together with interest from June 19, 2015 at the rate of Eight percent (8%) per annum.  The payment of the outstanding balance together with accrued and unpaid interest shall be paid as follows:

One installment of the total principal advanced together with any and all accrued and unpaid interest shall be payable in full to Koford Holdings, LLC at P.O. Box

150022, Ogden, UT 84415 or such other place as designated by the Note Holder, September 10, 2015 (the "Maturity Date") or upon the sale or transfer of the real property which secures this note, whichever occurs first; provided, however that Borrower may elect to extend the Maturity Date as provided below.

If the real property that secures this Note has not been sold or transferred prior to September 15, 2015, then Borrower shall be permitted to extend the Maturity Date to the date of the actual sale or transfer of the real property that secures this Note by giving notice of such extension to the Note Holder. In exchange for such extension, upon giving notice of such extension to the Note Holder, Borrower shall become obligated to pay the Note Holder an amount equal to ten percent of the net profits of the business of Borrower located at and operated from the real property that secures this Note within three (3) days of the date of the actual sale or transfer of the real property. For purposes of this Note, "net profits" means, with respect to the business identified above, the total revenue minus the total expenses. Such payment shall be in addition to the payment of principal and accrued interest.

Payment is due on the dates specified and shall be considered in default in the event the required payment if not made by the end of business on September 10, 2015. Debtor understands and agrees to pay the Secured Party a default interest rate of Ten percent (10%) from the origination date of loan.

**DEBTOR EXPRESSLY WARRANTS AND COVENANTS:**

1. That except for the security interest granted hereby Debtor is, or to the extent that this agreement states that the Collateral is to be acquired after the date hereof, shall be, the owner of the Collateral free from any adverse lien, security interest or encumbrances; and that Debtor shall defend the Collateral against all claims and demands of all persons at anytime claiming the same or any interest therein.

2. The Collateral is used or bought primarily for: Use in business.

3. That the Collateral shall be kept at: 282 U.S. Highway 6, Unit 19, Dillon, CO 80012.

4. Promptly to notify Secured Party of any change in the location of the Collateral.

5. To pay all taxes and assessments of every nature which may be levied or assessed against the Collateral.

6. Not to permit or allow any adverse lien, security interest or encumbrance whatsoever upon the Collateral and not to permit the same to be attached or replevined.

7. That the Collateral is in good condition, and that Debtor shall, at Debtor's own expense, keep and maintain the same in good condition and from time to time, forthwith, replace and repair all such parts of the Collateral as may be broken, worn out, or damaged without allowing any lien to be created upon the Collateral on account of such replacement or repairs, and that the Secured Party may examine and inspect the Collateral at any time, wherever located.

8. That Debtor shall not use the Collateral in violation of any applicable statutes, regulations or ordinances.

9. The Debtor shall keep the Collateral at all times insured against risks of loss or damage by fire (including so-called extended coverage), theft and such other casualties as the Secured Party may reasonably require, all in such amounts, under such forms of policies, upon such terms, for such periods, and written by such companies or underwriters as the Secured party may approve, losses in all cases to be payable to the Secured Party and the Debtor as their interest may appear. All policies of insurance shall provide for at least ten days' prior written notice of cancellation to the Secured Party; and the Debtor shall furnish the Secured Party with certificates of such insurance or other evidence satisfactory to the Secured Party as to compliance with the provisions of this paragraph. The Secured Party may act as attorney for the Debtor in making, adjusting and settling claims under or canceling such insurance and endorsing the Debtor's name on any drafts drawn by insurers of the Collateral.

UNTIL DEFAULT Debtor may have possession of the Collateral and use it in any lawful manner, and upon default Secured Party shall have the immediate right to the possession of the Collateral.

DEBTOR SHALL BE IN DEFAULT under this agreement upon the happening of any of the following events or conditions:

(a) default in the payment, within 20 days of the date the payment is due, or performance of any obligation, covenant or liability contained or referred to herein or in any note evidencing the same;

(b) the making or furnishing of any warranty, representation or statement to Secured Party by or on behalf of Debtor which proves to have been false in any material respect when made or furnished;

(c) loss, theft, damage, destruction, sale or encumbrance to or of any of the Collateral, or the making of any levy seizure or attachment thereof or thereon;

(d) death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver of any part of property of, assignment for the benefit of creditors by, or the commencement of any proceeding under any bankruptcy or insolvency laws of, by or against Debtor or any guarantor or surety for Debtor; and/or

(e) a default under any of the terms of the Promissory Note, executed on an even date herewith, including, without limitation, the events of default list in paragraph 4 of said Promissory Note.

UPON SUCH DEFAULT and at any time thereafter, or if it deems itself insecure, Secured Party may declare all Obligations secured hereby immediately due and payable and shall have the remedies of a secured party under Article 9 of the Colorado Uniform Commercial Code. Secured Party may require Debtor to assemble the Collateral and deliver or make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both parties. Expenses of retaking, holding, preparing for sale, selling or the like shall include Secured Party's reasonable attorney's fees and legal expenses (including the allocated fees and expenses of in-house counsel, if any) and such portion of the Secured Party's overhead as it may in its reasonable judgment deem allocable to and includable in such expenses.

No waiver by Secured Party of any default shall operate as a waiver of any other default or of the same default on a future occasion. The taking of this security agreement shall not waive or impair any other security Secured Party may have or hereafter acquire for the payment of the above indebtedness, nor shall the taking of any such additional security waive or impair this Security Agreement; but Secured Party may resort to any security it may have in the order it may deem proper, and notwithstanding any collateral security, Secured Party shall retain its rights of set-off against Debtor.

All rights of Secured Party hereunder shall inure to the benefit of its successors and assigns; and all promises and duties of Debtor shall bind Debtor's heirs, executors or administrators or Debtor's successors or assigns. If there be more than one Debtor, their liabilities hereunder shall be joint and several.

Debtor hereby agrees not to remove or change the location of the Collateral without prior notice to and approval by Secured Party. Debtor hereby specifically grants Secured Party an irrevocable right to enter upon whatever premises the Collateral is located to remove said Collateral in the event of default.

Dated: June 19, 2015

DEBTOR: Finger Lickin' Brands, LLC

_____

Authorized Signer