| | |
|---|---|
| **Timothy J. Dance (11553)** | **Timothy M. Lupinacci (Pro Hac Vice)** |
| **Snell & Wilmer L.L.P.** | **Baker, Donelson, Bearman,** |
| **15 West South Temple, Suite 1200** | **Caldwell & Berkowitz, PC** |
| **Salt Lake City, UT  84101** | **420 20th Street North** |
| **Telephone:  (801) 257-1900** | **1400 Wells Fargo Tower** |
| **Facsimile:  (801) 257-1800** | **Birmingham, AL 35203** |
| **tdance@swlaw.com** | **Telephone:  (205) 328-0480** |
| | **Facsimile:  (205) 322-8007** |
| | **tlupinacci@bakerdonelson.com** |

*Attorneys for Dickey's Barbecue Restaurants, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>**FINGER LICKIN' BRANDS, LLC,**<br><br>Debtor. | Bankruptcy Case No. 15-24141<br><br>Chapter 11<br><br>Honorable Joel T. Marker |

**MOTION FOR RELIEF FROM AUTOMATIC STAY, OR IN THE ALTERNATIVE FOR ADEQUATE PROTECTION PAYMENTS**

Dickey's Barbecue Restaurants, Inc. ("Dickey's"), by and through its undersigned counsel, moves this Court for relief from the automatic stay to terminate those certain Franchise Agreements (defined below) between Dickey's and the Finger Lickin Brands, LLC, (the "Debtor")[1], and to compel the Debtor to comply with certain non-monetary obligations under the Franchise Agreements pursuant to 11 U.S.C. § 362(d), Fed R. Bankr. P. 4001 and 9014.  This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334.  The

---

[1] Related entities Bungalow Holdings, LLC and Big Barbecue Restaurant Group, LLC have filed chapter 11 petitions in this Court (Case Nos. 15-24144 and 15-24143, respectively).  Counsel for the Debtor has indicated an intent to file a motion to substantively consolidate the three cases.

1

instant matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## I. PRELIMINARY STATEMENT

Dickey's and the Debtor are parties to certain Franchise Agreements[2] (collectively, the "Franchise Agreements") related to seven "Dickey's Barbecue Pit" franchised restaurants located in Vernal, UT; Midvale, UT; Ogden, UT; Layton, UT; Farmington, UT; Salt Lake City, UT; and Gillette, WY (collectively, the "Restaurants"). This Motion is premised on the fact that the Debtor is delinquent in the payment of its post-petition obligations under the Franchise Agreements, and is not operating the Restaurants in accordance with the standards required by the Franchise Agreements.

## II. RELEVANT FACTS[3]

**A.    Dickey's Barbecue Restaurants, Inc.**

Dickey's has expended time, skill, effort, and money to develop a system relating to the establishment and operation of fast casual restaurants under the name and mark "Dickey's Barbecue Pit" featuring the sale of freshly prepared barbecued meats and other food products.

Dickey's has developed a system of operation characterized by distinctive exterior and interior designs, décor, color schemes and furnishings; special recipes and menu items, uniform standards, specifications, and procedures for operations, quality, and uniformity of products and services, inventory and management controls, training and assistance and advertising and promotional programs (the "System").

---

[2] The Franchise Agreements are described in more detail in and attached to the Affidavit of Christine S. Johnson submitted herewith.

[3] Unless otherwise noted, the factual support for the statements contained in this motion is contained in the Affidavit of Christine S. Johnson filed contemporaneously herewith, which includes Exhibits A-C thereto.

Dickey's allows its franchisees, pursuant to Franchise Agreements, to use certain trade names, service marks, trademarks, symbols, logos, name and emblems, and indicia of origin, including but not limited to the mark "Dickey's Barbecue Pit" to identify for the public the source of services and products marketed under these marks and under the System and representing the System's high standards of quality, appearance, and service (collectively, the "Marks").

Dickey's has invested substantial effort over a long period of time, including expenditure of large sums of money, to develop goodwill in the Marks as distinctly designating high standards of quality, appearance, and service provided by its franchisees.

**B.    The Franchise Agreements**

As noted above, the Debtor entered into the Franchise Agreements with Dickey's, pursuant to which the Debtor is authorized to operate the Restaurants as "Dickey's Barbecue Pit" restaurants. True and correct copies of the Franchise Agreements are attached to the Affidavit of Christine S. Johnson (the "Johnson Affidavit") at Exhibit A.

Under the Franchise Agreements, the Debtor is required to pay Dickey's weekly Royalty Fees equal to five percent (5%) of Net Sales (as defined in the Franchise Agreements) on or before Monday of each week. *See* Exhibit A to Johnson Affidavit at Section 4.2.

In addition, the Franchise Agreements require the Debtor to pay Dickey's weekly payments of four percent (4%) of Net Sales to contribute to a marketing fund established by Dickey's to promote the System (the "Marketing Contributions"). *See Id.* at Section 5.8.

Nonpayment of the Royalty Fees and/or Marketing Contributions is an event of default under the Franchise Agreements. *Id.* at Section 16.3.

3

**C.     The Debtor's Breach of the Franchise Agreements and Bankruptcy Filing.**

On May 5, 2015, the Debtor's filed a voluntary Chapter 11 bankruptcy proceeding with this Court.  The Debtor has continued to operate post-petition as debtor in possession.

At the time of the bankruptcy filing, the Debtor was indebted to Dickey's in the amount of at least $16,846.32 in Royalty Fees and Marketing Contributions (the "Pre-petition Indebtedness").

On May 14, 2015, counsel for Dickey's wrote to counsel for the Debtor and advised of the Debtor's continuing post-petition obligation to pay the Royalty Fees and Marketing Contributions.  See correspondence attached to Johnson Affidavit as Exhibit B.  Despite the correspondence, the Debtor has failed to make any payments to Dickey's during the pendency of this case.  As of May 31, 2015, the Debtor is indebted to Dickey's in the amount of at least $30,575.11 on account of the post-petition Royalty Fees and Marketing Contributions due and owing.  See itemized statement attached to Johnson Affidavit as Exhibit C.  Dickey's asserts that such unpaid post-petition fees are administrative obligations of the estate under 11 U.S.C. § 503 and reserves the right to seek approval and payment of such fees as an administrative claim.

**D.     Termination Rights**

Pursuant to Section 16.3 of the Franchise Agreements, Dickey's has the contractual right to terminate the Franchise Agreement based on the Debtor's continued post-petition defaults. *See* Exhibit A to Johnson Affidavit.

Pursuant to Article 17 of the Franchise Agreements, upon termination, the Debtor shall immediately and permanently cease to use, any confidential methods, procedures, techniques, and trade secrets associated with the System, Marks, and all other distinctive forms, slogans,

signs, symbols, and devices associated with the System, including all advertising materials which display the Marks.  *See* Exhibit A to Johnson Affidavit.

Under Article 17, upon termination, Dickey's is entitled to an assignment of the applicable leasehold interest for each Restaurant, at its option, or, if such option is not exercised, to enter each premises to ensure changes are made as may be necessary to de-identify the premises from Dickey's Barbecue Pit restaurants.  *See* Exhibit A to Johnson Affidavit.

### III. ARGUMENT

**A.    Dickey's is entitled to stay relief because the Debtor cannot demonstrate that Dickey's is adequately protected.**

The filing of a bankruptcy petition operates as a stay of "any action to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  But, "[t]he fact that the automatic stay suspends termination of [a] Franchise Agreement does not prevent termination indefinitely."  In re Tudor Motor Lodge Associates, Limited Partnership, 102 B.R. 936, 951 (Bankr. D.N.J. 1989).

An interested party may be granted relief from the automatic stay for "cause":

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

(1)    for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

"Cause" sufficient to modify the automatic stay is not defined in the Bankruptcy Code or detailed in applicable legislative history.  In re M.J.&K. Co., Inc., 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993).  Thus, what constitutes "cause" for stay relief purposes ". . . is an intentionally

broad and flexible concept which must, of necessity, be determined on a case by case analysis." Matter of Holly's Inc., 140 B.R. 643, 687 (Bankr. W.D. Mich. 1992).

The moving party has the burden to make an initial showing of "cause" for relief from the stay. *See* In re Sonnx Industries, Inc., 907 F.2d 1280, 1285 (2nd Cir. 1990). Once cause is shown to exist, the debtor must prove that it is entitled to the protections afforded by the stay." In re M.J.&K. Co., Inc., 161 B.R. at 590. "The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than 'the debtor's equity in the property.'" In re Sonnax Indus., Inc., 907 F.2d at 1285 (*quoting* 11 U.S.C. § 362(g)(1)). Only where the movant fails to make an initial showing of cause, however, may the court deny relief without requiring any showing from the debtor that it is entitled to continued protection of the automatic stay. *Id.*; *see also*, 2 L. King, Collier on Bankruptcy ¶ 362.10 (15th ed. 1992) (moving party required to make a showing of cause under § 362(d)(1), then burden of proof, *i.e.* risk of nonpersuasion, shifts to party opposing motion).

Bankruptcy Courts and commentators have stated that:

> The sole duty of the Bankruptcy Court, however, in a Section 362 proceeding is to pass upon the debtor's proposed form of adequate protection. the responsibility of proposing a method of protection is reserved exclusively for the debtor. If a debtor asserts certain means of adequate protection and fails to support these means with competent evidence, the Bankruptcy Court may permissibly lift the stay without further explanation of any viable alternatives.

In re Tudor Motor Lodge Associates, Limited Partnership, 102 B.R. at 954.

Here, Dickey's is able to satisfy the initial burden of showing "cause" for relief from the automatic stay in that the Debtor is (1) in continuing material breach of the Franchise Agreements by failing to make required post-petition payments of Royalty Fees and Marketing

6

21825776

Contributions; (2) failing to abide by the non-monetary provisions of the Franchise Agreements; and (3) failing to meet the operational standards set forth in the Franchise Agreements.

        1.      Failure to Make Post-Petition Payments.

Pursuant to the Franchise Agreements the Debtor is obligated to pay Royalty Fees and Marketing Contributions on a weekly basis. As of May 31, the Debtor owes Dickey's at least $30,575.11 in post-petition Royalty Fees and Marketing Contributions. This is in addition to the $16,846.32 in pre-petition fees that were outstanding at the time of the bankruptcy filing.

A debtor's failure to make payments on post-petition monetary obligations has long been determined to satisfy the "for cause" standard under § 362(d)(1). *See* In re Skipworth, 69 B.R. 526 (Bankr. E. D. Pa. 1987); *see also* In re Ocaisio, 97 B.R. 825 (Bankr. E. D. Pa. 1989) (the party moving for relief from the stay satisfies initial burden of production by introducing evidence of debtor's continued failure to tender periodic payments on debt; burden then shifts to debtor to prove that adequate protection exists); In re Hinchliff, 164 B.R. 45, 48-49 (Bankr. E. D. Pa. 1994) (mortgagee met its initial burden of producing evidence that "cause" existed for lifting stay by introducing evidence of chapter 11 debtors' failure to make post-petition installment payments on mortgage debt; burden then shifted to debtors to establish that creditor was adequately protected).

In the case of In re B-K of Kansas, Inc., 69 B.R. 812 (Bankr. D. Kan. 1987), the bankruptcy court analyzed, among other things, the adequate protection issue under 11 U.S.C. § 362(d)(1) in the context of a franchise agreement between the debtor and Burger King Corporation. The B-K court granted the franchisor relief from the automatic stay "for cause,

7

including lack of adequate protection" by finding, among other things, that the debtor was not paying its post-petition monetary obligations under the franchise agreement:

> First, Burger King Corporation is not adequately protected in this case. The debtors have continued to use the trademarks and service marks without paying Burger King Corporation. the arrearages on royalties and advertising are accumulating at an enormous rate.

In re B-K of Kansas, Inc., 69 B.R. at 815.

The language above applies with equal force to the facts before this Court. The Debtor continues to use Dickey's valuable trademarks and service marks to induce the public to patronize its Restaurants and yet refuse to compensate Dickey's for the use of its Marks. Nothing in the Bankruptcy Code allows the Debtor to continue to demand that Dickey's honor the Franchise Agreements while the Debtor breaches its material payment obligations under the very same agreements.

### 2. Sub-Standard Operations.

In addition, the continued use of the Dickey's Marks without complying with Dickey's standards of operation constitutes irreparable harm, and thus a lack of adequate protection of an interest in property. Such irreparable harm has been recognized by a number of bankruptcy courts to warrant relief from the automatic stay under 11 U.S.C. § 362(d)(1). In In re B-K of Kansas, the bankruptcy court held that a terminated franchisee's continued unauthorized use of franchise trademarks constituted cause to terminate the automatic stay. The Court stated with respect to the injury to the franchisor's trademarks:

> The property in this case, the use of trademarks and service marks, is of such a type that money may never adequately protect the movant. The movant's reputation to the general public is at stake.

69 B.R. 812, at 815.

In another case citing the B-K approvingly, the bankruptcy court granted the franchisor relief from the automatic stay to enable the franchisor to complete termination of the franchise agreement. In re Tudor Motor Lodge Associates, Ltd. Partnership, 102 B.R. 936, 954 (Bankr. D.N.J. 1989). In Tudor Motor Lodge, the court recognized the value of the franchisor's name and the negative impact thereon caused by the debtor's failure to comply with the franchisor's standards of operation. The Tudor court concluded that it could not "permit the debtor to continue its substandard operations at the expense of [the franchisor] and all other . . . franchisees." *Id.* at 957. Accordingly, the Tudor court held that the debtor's continued use of the franchisor's trademarks constituted sufficient cause to grant the franchisor's motion for relief from the automatic stay to enable the franchisor to complete the termination of its license agreement with the debtor. *Id.*

In the present case, the Debtor's failure to operate the Restaurants in substantial compliance with Dickey's standards of operation will cause irreparable injury to Dickey's goodwill and reputation and constitutes sufficient "cause" for relief from the automatic stay. Examples of the Debtor's failure to comply with Dickey's operational standards are set forth in the Johnson Affidavit.

**B.    Dickey's is Also Entitled to Stay Relief Under 11 U.S.C. § 362(d)(2)**

Dickey's is separately entitled to stay relief under 11 U.S.C. § 362(d)(2). This provision provides that stay relief shall be granted if:

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

The "property" at issue here is the Franchise Agreements. The Debtor does not have "an equity" in the Franchise Agreements as the Debtor cannot, as a matter of law, either assume or assign the Franchise Agreements without Dickey's consent.

As Dickey's has established that the Debtor does not have equity in the Franchise Agreements, the Debtor has the burden of establishing the Franchise Agreements are necessary to an effective reorganization which is in prospect. 11 U.S.C. § 363(g). A debtor seeking to show the possibility of "effective reorganization, for purpose of defeating a motion for relief from stay must show reasonable prospect for successful reorganization within a reasonable time. The debtor must do more than manifest unsubstantiated hopes for successful reorganization. Matter of Canal Place, Ltd. Partnership, 921 F.2d 569 (5th Cir. 1991).

If the Debtor cannot meet its burden of establishing the Franchise Agreements are necessary to an effective reorganization, then Dickey's is entitled to relief from the automatic stay.

C.  **The "Non-Monetary" Obligations of the Franchise Agreements are enforceable by Dickey's and the Debtor Should be Require to Comply with these Provisions.**

Once the Franchise Agreements are terminated, the Debtor is required to satisfy certain "non-monetary" obligations. For example, pursuant to Section 17.2, upon termination, the Debtor no longer has any right to use the Marks and must take steps to "de-identify" the Restaurants from their appearance as Dickey's Barbecue Pit restaurants.

Numerous courts have held that while a debtor may reject an executory contract, which results in a breach thereof pursuant to 11 U.S.C. § 365(g)(1), such rejection does not terminate a creditor's right to compel enforcement of non-monetary obligations contained in the rejected agreement. *See* In re Printronics, Inc., 189 B.R. 995 (Bankr. N.D. Fla. 1995); In re Don & Lin

21825776

Trucking Co., Inc., 110 B.R. 562 (Bankr. N.D. Ala. 1990); Fellerman & Cohen Realty Corp. v. Clinical Plus, Inc., 156 B.R. 379, 389 (Bankr. E.D.N.Y. 1993) ("Section 365(g) does not disturb the equitable non-monetary rights arising from the breach of contract). The rationale for compelling a debtor to comply with non-monetary obligations in a contract which has been breached and terminated pursuant to 11 U.S.C. § 362 is the same as if the contract has been breached and rejected under 11 U.S.C. § 365.

Therefore, Dickey's seeks the entry of an order compelling the Debtor to satisfy its non-monetary obligations. To the extent the Debtor fails to comply with such obligations within a certain defined timeframe, Dickey's requests authorization to enter upon the Restaurants and "de-identify" the Restaurants.

## IV. CONCLUSION

Dickey's respectfully submits that ample grounds exist for relief from the automatic stay under either 11 U.S.C. § 362(d)(1) or (d)(2) and respectfully requests that stay relief be granted to Dickey's for the purposes of terminating the Franchise Agreements, or in the alternative, Dickey's requests that the Debtor immediately cure all post-petition past due payments and commence weekly payment of all amounts due under the Franchise Agreement in accordance with the terms of the Franchise Agreements as adequate protection. Dickey's further requests entry of an order compelling the Debtor to satisfy post-termination non-monetary obligations imposed under the Franchise Agreements and, in the event that the Debtor fails to do so, Dickey's requests authorization to complete de-identification of the Restaurants with a reservation of rights to seek allowance of an administrative claim for the costs associated therewith.

21825776

**WHEREFORE, ABOVE PREMISES CONSIDERED**, Dickey's prays as follows:

That relief from the automatic stay as provided by 11 U.S.C. § 362(a) be granted in favor of Dickey's for the purpose of terminating the Franchise Agreements, or in the alternative order that the Debtor cure all post-petition defaults and make all future post-petition payments due under the Franchise Agreements as adequate protection.

That the Debtor's be ordered upon the granting of stay relief to satisfy their post-termination non-monetary obligations imposed under the Franchise Agreements and, in the event the Debtor fails to do so, that Dickey's be authorized to complete the "de-identification" of the Restaurants with a reservation of its rights to seek allowance of an administrative claim for the costs associated therewith;

That the relief requested in this Motion become effective immediately upon entry of an Order Granting Relief from Automatic Stay and the provisions of Fed. R. Bankr. P. 4001(a)(3) be waived; and

For such other and further relief to which Dickey's is entitled and this Court may deem just and proper.

Dated: June 9, 2015

                                SNELL & WILMER L.L.P.


                            By: /s/ Timothy J. Dance
                                 Timothy J. Dance

                          *Attorneys for Dickey's Barbecue Restaurants, Inc.*


OF COUNSEL:

Timothy M. Lupinacci, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
420 20th Street North
1400 Wells Fargo Tower
Birmingham, AL 35203
Telephone: 205.328.0480
Facsimile: 205.322.8007
Email: tlupinacci@bakerdonelson.com

13